JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>GTS 900 F, LLC,<br><br>          Debtor.<br><br>———————————————<br><br>GTS 900 F, LLC, a California limited liability company,<br><br>          Plaintiff,<br><br>      v.<br><br>CORUS CONSTRUCTION VENTURE, LLC,<br><br>          Defendant. | Bankruptcy Case No. 2:09-bk-35127-VZ<br>Chapter 11<br><br>U.S. District Court Case<br>No. CV 10-06693 SJO<br><br>**ORDER DENYING MOTION FOR WITHDRAWAL OF BANKRUPTCY REFERENCE** |

      This matter is before the Court on Debtor and Plaintiff GTS 900 F, LLC ("Plaintiff") Motion to Withdraw Reference of Its Complaint in Adversary Bankruptcy Proceedings, Determine that Plaintiff Is Entitled to a Jury Trial, and Consolidate Cases ("Motion"), filed September 9, 2010. Defendant Corus Construction Venture, LLC ("Defendant") did not oppose the Motion. Instead, on October 8, 2010, Defendant and Plaintiff filed a Stipulation Regarding the Motion ("Stipulation"), where the parties agreed to have "[t]he reference of the Complaint . . . be withdrawn as proposed

in the . . . Motion . . . ."[1] (Stipulation Regarding GTS 900 F, LLC's Motion ¶ 1.) The parties also stipulated to consolidating Plaintiff's Complaint against Defendant with Plaintiff's separate Complaint against the Federal Deposit Insurance Corporation ("FDIC") for discovery and trial purposes. (*Id.* at ¶¶ 1, 2.) Defendant, however, filed an Objection to Plaintiff's request for a jury trial on October 19, 2010. (Docket No. 8.) The Court found this matter suitable for disposition without oral argument and vacated the hearing set for October 18, 2010. *See* Fed. R. Civ. P. 78(b). For the following reasons, Plaintiff's Motion is **DENIED**.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and Corus Bank, N.A. ("Bank") entered into a construction loan agreement in 2007, whereby the Bank agreed to lend Plaintiff up to $190,000,000 to allow Plaintiff to construct a project in Los Angeles. (Mot. 2:2-10.) On September 4, 2009, Plaintiff filed suit against the Bank. (*Id.* at 2:12-14.) On September 11, 2009, the FDIC was appointed receiver for the Bank. (*Id.* at 2:21-23.) On September 17, 2009, Plaintiff filed a voluntary petition under Chapter 11 of the Bankruptcy Code ("Bankruptcy Case") and removed the FDIC action to federal court ("FDIC Lawsuit"). (*Id.* at 2:24-28.) On December 7, 2009, the FDIC replaced the Bank as the defendant in the FDIC Lawsuit. (*Id.* at 3:3-4.) Then, on May 17, 2010, the Court withdrew the reference of the FDIC Lawsuit to the Bankruptcy Court. (*Id.* at 3:7-8.)

On October 16, 2009, the FDIC created Defendant, a Delaware entity created by the FDIC that acquired the Bank's assets and liabilities, including those relating to the loan agreement with Plaintiff. (*Id.* at 3:13-15.) Defendant filed a Proof of Claim in the Bankruptcy Case for the amount of $162,662,216.26 on October 29, 2009. (*Id.* at 3:17-18.) In response, Plaintiff filed a Complaint and Objection to Proof of Claim on December 29, 2009 and initiated an adversary proceeding before the Bankruptcy Court. (Mot. 3:19-24.) In the Complaint, Plaintiff asserted five claims for relief: (1) declaratory relief as to the amount of the Defendant's claim; (2) offset against the Proof

---

[1] The Federal Deposit Insurance Corporation, a defendant in a related case before the Court, joined the Stipulation. The related case is *GTS 900 F, LLC v. Corus Bank, N.A.*, No. 10-2763 (C.D. Cal., reference withdrawn on May 17, 2010).

of Claim amount; (3) equitable subordination under 11 U.S.C. § 510(c); (4) breach of contract; and (5) breach of the covenant of good faith and fair dealing.  (*Id.* at 3:25-4:2.)  Defendant subsequently filed an Answer to Plaintiff's Complaint on April 30, 2010.  (*Id.* at 4:7.)  Since then, the Bankruptcy Court has heard Plaintiff's Motion for Approval on Debtor's Second Amended Plan of Reorganization and denied that motion on August 27, 2010.  (*Id.* at 4:13-14.)  Defendant also filed a First Amended Disclosure Statement and Plan for Reorganization.  (*Id.* at 4:15-16.)  After close to a year from when Defendant filed its Proof of Claim, Plaintiff filed the instant Motion, praying the Court to withdraw the reference to the Bankruptcy Court, declare that Plaintiff is entitled to a jury trial for the breach of contract and breach of the covenant of good faith and fair dealing claims, and consolidate the FDIC Lawsuit with the instant action.  (*Id.* at 1:20-27.)

II.     LEGAL STANDARD FOR WITHDRAWAL OF REFERENCE

Pursuant to 28 U.S.C. § 157 ("Section 157"), a district court has authority to withdraw reference to the bankruptcy court.  *See* 28 U.S.C. § 157(d).  Section 157(d) provides for both permissive and mandatory withdrawal, depending on the circumstances of the action.  *Id.*  For permissive withdrawal, Section 157(d) authorizes "[t]he district court [to] withdraw, in whole or in part, any case or proceeding referred . . . on its own motion or on timely motion of any party, for cause shown."  *Id.*   When a party timely moves to withdraw proceedings that requires "consideration of both [T]itle 11 [of the Bankruptcy Code] and other laws of the United States regulating organizations or activities affecting interstate commerce," the court is mandated to withdraw the reference.  *Id.*  The party seeking withdrawal carries the "burden of persuasion is on the party seeking withdrawal."  *FTC v. First Alliance Mortg. Co.*, 282 B.R. 894, 902 (C.D. Cal. 2001) (citation omitted).  It is within a district court's discretion to grant or deny a motion for permissive withdrawal of reference; that decision will not be disturbed unless the court abuses its discretion.  *See In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir. 1990).

///
///

III. DISCUSSION

    A.    Plaintiff's Motion for Withdrawal Is Untimely.

The "threshold question" in evaluating a motion to withdraw the reference under 28 U.S.C. § 157(d) is whether the motion was made in a timely manner. *See In re Mahlmann*, 149 B.R. 866, 869 (N.D. Ill. 1993). Plaintiff does not address this threshold question in its Motion. (*See generally* Mot.)

A court may consider a motion for withdrawal of reference only if it is timely. *See* 28 U.S.C. § 157(d); *see also In re Molina*, No. 10-0575, 2010 WL 3516107, at *2 (N.D. Cal. Sept. 8, 2010). "A motion to withdraw is timely if it was made as promptly as possible in light of the developments in the bankruptcy proceeding." *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1007 n.3 (9th Cir. 1997) (citing *In re Baldwin-United Corp.*, 57 B.R. 751, 754 (S.D. Ohio 1985)). Thus, a party must move for withdrawal "at the first reasonable opportunity" it has, "as evaluated within the specific factual context [of the case]." *Stratton v. Vita Bella Grp. Homes, Inc.*, No. F07-0584, 2007 WL 1531860, at *2 (E.D. Cal. May 25, 2007) (citing *In re Chateaugay Corp.*, 104 B.R. 622, 624 (S.D.N.Y. 1989)). Courts have found a motion to withdraw the reference untimely when a "significant amount of time has passed since the moving party had notice of the grounds for withdrawing the reference or where the withdrawal would have an adverse effect on judicial economy." *Hupp v. Educ. Credit Mgt. Corp.*, No. 07CV1232, 2007 WL 2703151, at *3 (S.D. Cal. Sept. 13, 2007) (citation omitted).

Here, Plaintiff's Motion is untimely because Plaintiff failed to move for withdrawal of reference at the first reasonable opportunity it had. Defendant filed a Proof of Claim in Bankruptcy Court on October 29, 2009, to which Plaintiff responded by filing a Complaint and Objection to Proof of Claim against the Defendant and by initiating adversary proceedings on December 29, 2009. (Mot. 3:19-24.) In its Complaint, the Plaintiff asserted the state law claims of breach of contract and breach of the covenant of good faith and fair dealing. (Mot. 3:25-4:2; Req. for Judicial Notice ("RJN") Ex. 1 ¶¶ 48-53.) Therefore, the first reasonable opportunity Plaintiff had was no later than December 29, 2009, when Plaintiff was aware of those state law claims. Plaintiff cannot now come before the Court and assert the same state law claims as the bases for

withdrawal of the reference. *See Mahlmann*, 149 B.R. at 870 (finding that a one month delay made the motion to withdraw reference untimely because the moving party was fully aware of the basis for withdrawal at the time the movant initiated an adversary action); *Hupp*, 2007 WL 2703151, at *3 (A motion filed seven months after movant had "first brought the [grounds for withdrawal] to the Bankruptcy Court's attention" was untimely.); *In re Miles*, No. 10-0940, 2010 WL 3719174, at *2 (N.D. Cal. Sept. 17, 2010) (denying motion to withdraw reference because movant "was well aware of each of the purported grounds for the withdrawal well before she [untimely] filed . . ."). Instead of filing a motion to withdraw the reference as "promptly as possible," Plaintiff waited close to a year before it filed the instant Motion on September 9, 2010. (Docket No. 1)  The eight month delay renders the Motion untimely. *See, e.g.*, *Mahlmann*, 149 B.R. at 870 (motion filed one month after complaint held untimely); *Laine v. Gross*, 128 B.R. 588, 589 (D. Me. 1991) (finding a motion to withdraw the reference untimely when filed six months after complaint); *Connolly v. Bidermann Indus. U.S.A., Inc.*, No. 95-1791, 1996 WL 325575, at *3 (S.D.N.Y. 1996) (holding that an eight month delay rendered a motion to withdraw the reference untimely).

The Court's finding is supported by the specific factual background of the case and the developments in the bankruptcy proceeding. In *In re Baldwin-United Corp.*, 57 B.R. at 753, the court held that "the determination of whether a motion is timely would turn . . . on whether a reorganization plan [under Chapter 11] and disclosure statement had already been prepared or approved." *See also* 9 AM. JUR. 2D *Bankruptcy* § 734 (2010). Similar to *Baldwin-United*, Plaintiff in the case at hand already submitted a Second Amended Plan of Reorganization on August 27, 2010. (Mot. 4:13-14.) Defendant filed a First Amended Disclosure Statement and Plan of Reorganization on September 3, 2010.  (Mot. 4:15-16; RJN Ex. 4.)  Plaintiff's Motion "could have been filed earlier," but was "filed at a time when it could delay and consequently jeopardize the reorganization . . . ." *Baldwin-United*, 57 B.R. at 753. Furthermore, Plaintiff "point[s] to no substantive grounds to warrant delay to seek bankruptcy withdrawal . . . ." *Stratton*, 2007 WL 1531860, at *2. Even if the withdrawal of the FDIC Lawsuit to this Court represented changed circumstances (Mot. 11:2-4), the Motion is still untimely because the reference to the FDIC

Lawsuit was withdrawn on May 17, 2010, four months before Plaintiff filed the instant Motion (Mot. 3:7).  Granting Plaintiff's Motion at this juncture, after close to a year of proceedings have already taken place, will have an adverse effect on judicial economy and the administration of justice.  *See Miles*, 2010 WL 3719174, at *2.

Accordingly, Plaintiff's Motion is DENIED because it is untimely.  The Court cannot withdraw the reference pursuant to 28 U.S.C. § 157(d).  Doing so would have a "negative[] impact[] [on the] bankruptcy administration by needlessly disrupting the bankruptcy court's seamless processing of the case . . . [and] effectively derail[] the bankruptcy process provided by statute."  *In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002) (citation and quotes omitted).

B.   <u>Plaintiff Fails to Show Cause for Withdrawal</u>.

Assuming, *arguendo*, that the Motion is timely, Plaintiff fails to show cause for permissive withdrawal of the reference from Bankruptcy Court.  "Permissive withdrawal is permitted only in a limited number of circumstances."  *Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.*, 355 B.R. 214, 223 (D. Haw. July 31, 2006) (citations omitted).  The Ninth Circuit has held that "[i]n determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors."  *Sec. Farms*, 124 F.3d at 1008.

    1.   <u>Because Core Matters Are Implicated, It Would Be an Inefficient Allocation of Judicial Resources for the Court to Withdraw Reference</u>.

        i.   <u>Core Matters Should Be Resolved Before the Bankruptcy Court</u>.

Bankruptcy judges have jurisdiction to hear and determine all cases brought under Title 11 of the Bankruptcy Code and "all core proceedings" arising under Title 11, or arising in a case brought under Title 11.  *See* 28 U.S.C. § 157(b)(1).  Section 157(b)(1) authorizes bankruptcy judges to enter appropriate orders and judgments with respect to Title 11 cases and core proceedings, subject to review by the district court.  *Id.*  Although "core proceedings" is undefined,

Section 157(b)(2) sets forth a "non-exhaustive list" of core proceedings. *See In re Yochum*, 89 F.3d 661, 669 (9th Cir. 1996) (citation omitted).

Adjudication of "counterclaims by the estate against persons filing claims against the estate" is characterized as a core proceeding. 28 U.S.C. § 157(b)(2)(D). A counterclaim, "even one based entirely on state law, can be a core proceeding . . . ." *In re Marshall*, 600 F.3d 1037, 1058 (9th Cir. 2010) (quotes omitted). The Ninth Circuit, however, recently clarified in *In re Marshall* that simply because a counterclaim "falls within the plain language definition of a core proceeding" of Section 157(b)(2) does not automatically make it a core proceeding.[2] *See id.* at 1056-57 (quotes omitted); *but cf. Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.") (citation omitted). Rather, "[a] counterclaim to a proof of claim can be adjudicated as a core proceeding . . . if it is a 'necessary precursor to the resolution of [a proof of claim] against the bankruptcy estate.'" *In re Gorilla Co.* (*Gorilla II*), No. 10-1029, 2010 WL 4038842, at *2 (D. Ariz. Oct. 14, 2010) (quoting *Marshall*, 600 F.3d at 1040).[3] In other words, the counterclaim must be "so closely related to the proof of claim that the resolution of the counterclaim is necessary to resolve the allowance or disallowance of the claim itself." *Marshall*, 600 F.3d at 1058 (citation omitted).

"The existence of core matters weighs in favor of resolution of the adversary proceeding by the bankruptcy court." *Hawaiian Airlines*, 355 B.R. at 223. This is because "hearing core matters in a district court could be an inefficient allocation of judicial resources given that the

---

[2] "Prior to *Marshall*, the statute was clear that all counterclaims asserted by a debtor against a persons [sic] filing claims in the bankruptcy case were defined as core." *In re Gorilla Co.* (*Gorilla I*), 429 B.R. 308, 312 (D. Ariz. 2010). At least one bankruptcy judge has been critical of *Marshall*, stating that "[p]erhaps *Marshall* is simply a good example of a hard case making bad law, bad in the sense of being difficult to apply to other situations." *Id.* at 313. The Court, however, need not resolve the conflict between the plain meaning of the legal text and *Marshall*. Even under the narrow test outlined in *Marshall*, Plaintiff's counterclaims qualify as core proceedings. *See infra* Part III.B.1.ii.

[3] In *Gorilla II*, the District Court for the District of Arizona affirmed the bankruptcy court's determination in *In re Gorilla Co.* (*Gorilla I*), 429 B.R. at 317, that the debtors' counterclaims were core proceedings.

bankruptcy court generally will be more familiar with the facts and issues." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993); *accord Molina*, 2010 WL 3516107, at *2; *In re Woldrich*, No. 10-1245, 2010 WL 3087487, at *1 (D. Ariz. Aug. 6, 2010).

### ii. Plaintiff's Counterclaims Are Core Matters.

Plaintiff asserts that its breach of contract and breach of the covenant of good faith and fair dealing claims are non-core because the claims are "garden-variety state law lender liability damages claims." (Mot. 5:24-26.)

Plaintiff's argument that its claims against Defendant are "non-core" runs directly counter to Ninth Circuit case law and statutory language. Firstly, Plaintiff's fourth and fifth claims are actually "counterclaims" because they are "counterclaims asserted by a debtor against a persons [sic] filing claims in [a] bankruptcy case . . . ." *See In re Gorilla Co.* (*Gorilla I*), 429 B.R. 308, 312 (D. Ariz. 2010); *see also Marshall*, 600 F.3d at 1040 (where debtor "made a counterclaim" against a person who "filed a proof of claim"). Secondly, the Ninth Circuit has made abundantly clear that a counterclaim, "even one based entirely on state law, can be a core proceeding . . . ." *Marshall*, 600 F.3d at 1058 (citing *In re Harris*, 590 F.3d 730, 738-41 (9th Cir. 2009) (holding that a state law contract claim was a "core proceeding" that "arose under" Title 11 of the Bankruptcy Code)). In fact, Section 157(b)(3) mandates "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

The fact that Plaintiff's counterclaims fall within the plain language definition of a core proceeding under Section 157(b)(2) is not dispositive in and of itself. The Court must apply the narrower test outlined by the *Marshall* court. The Court finds that Plaintiff's fourth and fifth counterclaims are so closely related to Defendant's Proof of Claim that the resolution of the counterclaims is necessary to resolve whether the Defendant's claim should be allowed or disallowed. *See Marshall*, 600 F.3d at 1058. Defendant's claim relates to the loan agreement between Plaintiff and the Bank. (RJN Ex. 9 at 240.) Defendant alleges that Plaintiff owes $162,098,832.69 in principal and $563,383.57 in accrued interest. (*Id.*) Plaintiff's breach of

8

1  contract and breach of the covenant of good faith and fair dealing counterclaims also relate to the
2  same loan agreement. (*Id.*) Defendant's claim and Plaintiff's counterclaims are thus "all 'part and
3  parcel' of but a single transaction . . . ." *Gorilla I*, 429 B.R. at 314 (quoting *Marshall*, 600 F.3d at
4  1040). Moreover, through Plaintiff's counterclaims, Plaintiff seeks to "set[] off from [Defendant]'s
5  claim the amount of damages sustained by [Plaintiff]." (RJN Ex. 1 at 17). Therefore, to determine
6  whether Defendant's claim should be allowed or disallowed, in whole or in part, a court has to first
7  resolve Plaintiff's counterclaims.

8  Accordingly, Plaintiff's fourth and fifth counterclaims are core proceedings, which the
9  Bankruptcy Court should hear and resolve.[4] *See Hawaiian Airlines*, 355 B.R. at 223; *Molina*, 2010
10 WL 3516107, at *2.

12             2.      Plaintiff Is Forum Shopping.

13 Were Plaintiff's fourth and fifth counterclaims to be non-core, the Court would still deny
14 Plaintiff's Motion. A factor that weighs against withdrawal is the prevention of forum shopping.
15 *Molina*, 2010 WL 3516107, at *3. The discretion to withdraw a reference to the bankruptcy court
16 should be "employ[ed] [ ] judiciously in order to prevent [withdrawal] from becoming just another
17 litigation tactic for parties eager to find a way out of bankruptcy court." *In re Kenai Corp.*, 136 B.R.
18 59, 61 (S.D.N.Y. 1992) (citation omitted). Forum shopping is likely where a party moves to
19 withdraw the reference after adverse findings have been made against it by the Bankruptcy Court.
20 *See In re New Your Trap Rock Corp.*, 158 B.R. 574, 577 (S.D.N.Y. 1993).

21 In the case at hand, the Bankruptcy Court heard and denied Plaintiff's Second Amended
22 Plan of Reorganization on August 27, 2010. (Mot. 4:13-14.) Thereafter, Plaintiff filed the instant
23 Motion on September 9, 2010. (Docket No. 1.) Plaintiff's motives are highly suspect because of
24 the eight month delay between when Plaintiff could have filed a motion to withdraw reference to

---

[4] The Court's holding that Plaintiff's fourth and fifth counterclaims are core proceedings is not inconsistent with its Order Granting Motion to Withdraw the Reference in the FDIC Lawsuit, issued on May 17, 2010 ("May 17 Order"). In that order, the Court determined that withdrawal of reference was mandatory because resolution of that action involves substantial and material questions of federal non-bankruptcy law. (*See* May 17 Order 2.)

when Plaintiff actually filed the Motion, and because of the close temporal proximity of the adverse ruling to when Plaintiff filed the instant Motion. The developments in the Bankruptcy Court lead the Court to find that the adverse ruling was the impetus for Plaintiff to file its Motion. Plaintiff is forum shopping and such attempts should not be rewarded. Plaintiff cannot avoid adjudication of its counterclaims before the Bankruptcy Court after Plaintiff chose to file its counterclaims in that court rather than with this Court.

### 3. Plaintiff's Jury Trial Demand Does Not Weigh in Favor of Withdrawal.

Lastly, Plaintiff's jury trial demand does not weigh in favor of withdrawal of the reference at this time. (*See* Mot. 6:10-28.)

Pursuant to Section 157(e), "the bankruptcy judge may conduct a jury trial if specifically designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e). Thus, the parties have to expressly consent for Plaintiff's fourth and fifth claims to be tried before a jury in Bankruptcy Court. Both parties, however, have expressed their intent to not consent. (*See* Mot. 4:11-12.) As such, were Plaintiff to have a right to a jury trial, the trial will likely be before this Court.

Nonetheless, Plaintiff's request for a jury trial is premature and does not necessitate the Court to immediately withdraw reference to the Bankruptcy Court. The "great majority of courts" and the Ninth Circuit have held that "[a] valid right to a Seventh Amendment jury trial in the district court does not mean the bankruptcy court must instantly give up jurisdiction and that the action must be transferred to the district court." *In re Healthcentral.com*, 504 F.3d 775, 788 (9th Cir. 2007). The Bankruptcy Court may retain jurisdiction over the action for pre-trial matters such as discovery, pre-trial conferences, and routine motions. *See id.* at 787-88. Thus, assuming that Plaintiff has a right to a jury trial, judicial economy and efficiency still require the Court to deny the Motion because of "the bankruptcy court's unique knowledge of Title 11 and familiarity with the [instant] action[] before [it]." *Id.* (citations omitted). The Court will divest jurisdiction from the Bankruptcy Court when this action is ready for trial and no sooner. *See id.* at 788.

Accordingly, the Court DEFERS ruling on Plaintiff's request for a jury trial so that the Bankruptcy Court can decide on that issue. *See Am. Universal Ins. Co. v. Pugh*, 821 F.2d 1352, 1355 (9th Cir. 1987) ("A bankruptcy court is an appropriate tribunal for determining whether there is a right to a trial by jury of issues for which a jury trial is demanded.") (citations omitted).

IV. <u>RULING</u>

For the foregoing reasons, Plaintiff's Motion to Withdraw the Reference is **DENIED** and this case is hereby remanded back to the Bankruptcy Court. The Court **DEFERS RULING** on Plaintiff's request for a declaratory ruling that Plaintiff is entitled to a jury trial. The Bankruptcy Court may decide whether Plaintiff is so entitled. Plaintiff's request for consolidation of the FDIC Lawsuit and the instant action is **DENIED**.

IT IS SO ORDERED.

Dated: November 23, 2010.

*S. James Otero*

S. JAMES OTERO
UNITED STATES DISTRICT JUDGE